No. 31,934

THE RAMSEY PETROLEUM COMPANY, G. L. RAMSEY and ALICE M. RAMSEY, *Appellees,* v. E. FRANK JONES, *Appellant.*

(40 P. 2d 452)

Opinion filed January 26, 1935.

A. C. Malloy, R. C. Davis, Warren H. White, all of Hutchinson, and *John S. Slason,* of Wichita, for the appellant.

K. M. Geddes, Stanley Taylor, both of El Dorado, John J. Jones, of Chanute, and *W. N. Banks,* of Independence, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to quiet title to certain oil and gas leases in the city of Chase, in Rice county, where oil development has been active in recent years.

Before stating the facts upon which the rival claims of the litigants were founded, it seems expedient to summarize the provisions of a city ordinance regulating the drilling. of oil and gas wells within the city of Chase. Omitting many details of no present concern, the ordinance provided that only one well could be drilled in any one city block; that a permit issued by the city was requisite before drilling could be commenced; that any and all owners of leases within the block might share in the expenses and benefits of such well drilling if they elected to do so within ten days after the drilling permit was issued. The royalty interests of lot owners within the block, as well as those of leaseholders who did not choose to join in the expense of drilling, were defined by the ordinance on a basis of which there is no complaint. Whatever features of the ordinance may require more critical attention will be stated as we proceed.

It appears that in the city of Chase there is a block numbered 4, which is bounded on the south by a railway right of way 300 feet wide and running east and west. .

On and prior to June 9, 1933, the plaintiff had acquired oil and gas leases on eleven lots in block 4, two of which, lots 14 and 15, it had leased from the owner, H. W. Hedges, who chanced to be the city clerk.

On June 9 plaintiff made formal application to the city government for a permit to drill in block 4, and specified the particular lot, No. 15, on which it proposed to commence operations. The same day the application was granted and the permit issued— "such well to be located on lot 15, block 4." It recited that it was issued under the provisions of the pertinent ordinance, dated June 9, 1933, and bore the signature:

"THE CITY OF CHASE, KANSAS.
"By H. W. HEDGES, *Its City Clerk.*"

About the time these preliminaries for drilling were arranged, the defendant in this action, E. Frank Jones, who held an oil and gas lease on a 10-acre tract of land immediately south of the railway right of way, was engaged in drilling thereon. He finished this work on June 28, and his well was brought in as a producer. It was located 380 feet south of block 4. On the following day, June 29, for the ostensible purpose of avoiding the demolition of some buildings on lot 15, plaintiff informally asked of Hedges, owner of lots 15 and 14 and who was also city clerk, for his consent to change the location of the drilling permit from lot 15 to lot 14. This consent was informally given and later Hedges, as city clerk, advised the mayor and council of the incident and they made no objection. Hedges changed the number of the lot specified in plaintiff's application of June 9, and plaintiff itself changed the number specified in its permit from lot 15 to lot 14. Although the avowed reason for changing the location of the proposed well from lot 15 to 14 was to avoid the demolition of certain buildings, the circumstances might warrant an inference that it was done to put the well in block 4 considerably closer to defendant's new producing well just south of the railroad right of way.

On July 7 defendant obtained a lease from the owner of three lots in block 4 and a lease of three other lots from another owner. He then filed a formal written notice with the city clerk that he

elected to participate in the well-drilling project set on foot by plaintiff. This notice reads:

"CHASE, KAN., July 8, 1933.

"MR. WALLACE HEDGES, *City Clerk:*

. . . . . . . . . . . .

"This will advise you that I am the owner of oil and gas leases covering all of lots 5, 6, 7, 11, 12, and the east half of 10 and all of lot 13 in block 4, city of Chase, Kan.

"I hereby agree to pay my proportionate share in the actual total cost and expense of completing and operating this well.

. . . . . . . . . . . .

"E. FRANK JONES."

Plaintiff ignored this claim of defendant to participate in the drilling of the well in block 4, and it was completed as a producer on August 31. Thereafter plaintiff brought this action setting up its leasehold titles, its development of the oil well thereon, and its exclusive ownership thereof. It prayed that defendant's claim of right based upon its notice of July 7 be adjudged null and void.

Defendant's answer supplied additional facts, particularly in respect to the granting of the original permit to plaintiff on June 9 to drill on lot 15, and the subsequent change on the lot number from 15 to 14—the next day after defendant's producing well south of the railroad right of way had been successfully completed—and alleged that the change had been made to bring plaintiff's proposed well closer to the point where he had just struck oil.

Defendant also pleaded his acquisition of leases in block 4 on July 7, and his formal election on July 8 to share in the development of plaintiff's well; the giving of due notice thereof to plaintiff; his repeated offers to pay his proportionate share of the drilling and operation of the well; and that he was ready, able and willing to conform to the requirements of the ordinance in respect thereto.

Defendant concluded with a prayer for equitable relief, an accounting of the costs of drilling and operation, and for a decree fixing his proportionate share of the net proceeds of the oil well.

The issues developed no material dispute of fact. After some colloquy between counsel for the parties touching the validity of plaintiff's permit originally dated June 9 and informally redated June 29, the record reads:

[COUNSEL FOR PLAINTIFF]: "If the court please, at this time we move the court for an order requiring the defendant to elect whether he will stand upon the ground that we have a permit or that we have no permit, and are without a permit.

"The Court: Is it your contention that their permit is not valid?

[Counsel for Defendant]: "It is our contention that the city clerk issued a permit. The court can pass on whether or not that permit is valid.

"The Court: Are you contending that their permit is illegal or invalid?

[Counsel for Defendant]: "We are simply speaking of what the facts are; whether or not it is legal is a legal question in the case.

"The Court: Well, I think I will sustain their motion. I want to know whether you are contending that it is a valid or invalid permit?

[Counsel for Defendant]: "In compliance with the court's order, then, we will make no further contest as to the validity of the original permit, but we of course contend that the change of that permit later by the city clerk constituted a new permit so as to extend the ten-day period."

Judgment was rendered for plaintiff, and defendant appeals.

The propriety of the trial court's decision turns on the proper significance to be given to the provision of the ordinance which declared:

"Any person or corporation, other than the permittee, holding oil and gas leases on land in the block, shall have the right to share in the ownership and benefits of such oil or gas well in the proportion that the area of his or its land or lease bears to the area of the block, exclusive of streets and alleys, provided that within ten days from the date of the issuance of such permit, he or it shall file with the city clerk his or its election in writing to pay to the holder of the permit, or his or its assigns, a like proportion of the total cost and expense of completing and operating the well."

Defendant conceded that plaintiff's permit was valid as of the date of June 29. On the issuance of the permit as of that date (unless the earlier date of June 9 was valid) the rights of all leaseholders in block 4 were crystallized, and so, too, were the rights of lot owners. Defendant was not a leaseholder in block 4 on June 29, consequently he was not entitled to ten days or any other period in which to elect to share in the costs and benefits of the well as a proportionate owner. When plaintiff took out a permit to drill a well in block 4, it was bound to take into account the possibility that any or all other persons or corporations then holding valid leases in block 4 had a right, if timely claimed, to participate in the adventure, but it was not bound to give any concern to the possibility that other leases might be made and executed later whose holders might desire to participate in the drilling venture. The ordinance did not require or provide for such a possibility.

The plain letter of the city ordinance was the law of this case; and there is not the slightest reason disclosed in this record why a

court of justice should be otherwise concerned about a lawsuit of this character.

The judgment is affirmed.

HARVEY, J. (dissenting): It is my view that the rights of plaintiff as against defendant must be predicated upon the theory, (1) that its permit to drill was issued June 29, 1933; or (2) that it drilled without a permit. I am also of the opinion that the provision of the city ordinance which limited the right to participate in the drilling of the well to the lessee of other property in the block, as distinct from the owner of such property, is void as an undue restriction upon the property rights of an owner of real property; hence, that the question of whether defendant obtained his lease prior to June 29, or after that date, is not material if he did obtain it and file his notice to participate in the drilling of the well within ten days after June 29, which he did in this case.